IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD KNELLINGER, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| YORK STREET PROPERTY | : | |
| DEVELOPMENT, LP, et al. | : | NO. 14-4712 |

MEMORANDUM

Dalzell, J.                                                                                                                                                     November 6, 2014

**I.     Introduction**

We consider here defendant City of Philadelphia's motion to dismiss for failure to state a claim under Fed. Rule. Civ. P. 12(b)(6). The City of Philadelphia ("City") asks that we dismiss with prejudice the federal law claims asserted against it and remand the remainder of the case to state court. Plaintiffs oppose the City's motion and request, should we find certain defects in their Complaint, that they be allowed to cure them.

We have jurisdiction over plaintiffs' claims under 42 U.S.C. § 1983 pursuant to 28 U.S.C. § 1331.

**II.     Standard of Review**

A defendant moving to dismiss under Rule 12(b)(6) bears the burden of proving that the plaintiff has failed to state a claim for relief. See Fed. R. Civ. P. 12(b)(6); see also, e.g., Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). To survive a Rule 12(b)(6) motion, the complaint must contain sufficient factual matter, accepted as true, to state a facially plausible claim to relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

As the Supreme Court stresses, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action…do not suffice." Id. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

In the wake of Twombly and Iqbal, our Court of Appeals laid out a two-part test to apply when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6):

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations omitted). In deciding a motion to dismiss, we may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record," and any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefits Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

We recite the facts as they appear in the Complaint ("Compl.").

### III.   Factual Background

The crux of plaintiffs' lawsuit is the former Thomas W. Buck Hosiery factory, located at 1817-41 York Street in Philadelphia (the "Property").  Compl. at ¶ 15. Defendant York Street Property Development, LP owned the Property during the times pertinent to this case. Id. at ¶ 16.

Defendant YML Realty, Inc. was used as a straw purchaser for the Property to transfer it to the owner. Id. at ¶ 15. Defendant York Street Property Development GP, LLC, is the general partner of York Street Property Development, LP. Id. at ¶ 14. Defendant Mahman Lichtenstein is the President and sole member of York Street Property Development, GP, and defendant Yechiel Michael Lichtenstein is the President and Secretary of YML Realty, Inc. Id. at ¶¶ 12-13. These defendants (collectively the "York Street Defendants"), id. at ¶ 10, along with the City, have been sued in relation to a fire on April 9, 2012 that burned down the Property. Id. at ¶ 35. Plaintiffs in this case are Richard Knellinger, Furniture Outlet, Inc., Giamari Furniture & Bedding, Inc., and Dimitrios and Melissa Tsiobikas -- all whose properties were damaged by the fire. Id. at ¶¶ 1-5.

Plaintiffs allege that from 2008 until the fire on April 9, 2012, the Property had neither a working sprinkler system nor a working alarm system, and was not properly maintained or secured against trespassers. Id. at ¶ 17. The City of Philadelphia's Department of Licenses and Inspections ("L&I") issued many violations to the Property between January 2009 and March 2012, apparently to no avail. Id. at ¶¶ 18-20. Despite notices from L&I that the Property was unsafe, the plaintiffs allege "numerous vandals, vagrants, drug dealers, drug users, prostitutes, looters, and others were entering upon and/or residing at the Property." Id. at ¶¶ 21-22.

In October of 2011, local residents contacted the City about the Property, reporting the unsafe conditions and disrepair. Id. at ¶ 28. L&I Inspector Ted Pendergrass opened a new case on the Property and issued a violation in November of 2011. Id. at ¶ 29. Over the next several months, Mr. Pendergrass and other L&I inspectors visited the Property and informed the York Street Defendants regarding the violations -- including a defective sprinkler system. Id. at ¶¶ 30-

33. The York Street Defendants did nothing, and on April 9, 2012 the Property burned down. Id. at ¶¶ 34-35.

Embers and burning debris spread from the fire, and eventually the Property collapsed, partially onto an adjacent property located at 2411 Kensington Avenue. Id. at ¶¶ 36-37. The collapse killed two firefighters and injured two more. Id. at ¶ 38. The fire and collapse also damaged plaintiffs' buildings and property, requiring extensive repairs. Id. at ¶¶ 38-40.

In April of 2014, plaintiffs sued the York Street Defendants and the City in the Court of Common Pleas of Philadelphia County. Remand Notice at ¶ 1. In August, the City removed to this Court and promptly filed this motion to dismiss. The City asks that we dismiss plaintiffs' federal law claims for failure to state a claim and then remand this matter to state court. MTD at 5.

Count IV of plaintiffs' complaint claims violations of 42 U.S.C. § 1983. Compl. at ¶¶ 73-93. According to the plaintiffs, by "failing to take proper action to address three years of complaints and the conditions at the property giving rise to numerous code violations and notices, [the City] set into action a chain of events that it knew or reasonably should have known would cause the acts and omissions of York Street Defendants that give rise to liability." Id. at ¶ 79. Plaintiffs further allege that the City undertook a special relationship with plaintiffs by issuing citations to the York Street Defendants and providing the sole remedy for code violations at the Property. Id. at ¶¶ 80-82. Plaintiffs aver the City failed to train and supervise building inspectors and had a policy or custom of declining to take appropriate legal action against owners of non-compliant properties, and were deliberately indifferent in doing so. Id. at ¶¶ 83-87.

4

As a direct result of the City's "actions, conduct, and omissions," plaintiffs assert, the Property was not properly or safely maintained, which directly and proximately caused the fire. Id. at ¶ 88. Plaintiffs claim an unlawful taking and deprivation of property rights, resulting in violations of the Fifth and Fourteenth Amendments of the United States Constitution, as well as the Equal Protection Clause. Id. at ¶¶ 90-91.

**IV.     Discussion**

42 U.S.C. § 1983 provides that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Section 1983 does not create substantive rights. Rather, it only provides remedies for deprivations of rights established elsewhere in the U.S. Constitution or under federal law. Brown v. Commonwealth of Pa., Dep't of Health Emergency Med. Servs. Training Inst., 318 F.3d 473, 477 (3d Cir. 2003). We will address plaintiffs' federal law claims -- which sound in substantive due process, the Takings Clause, municipal liability under Monell, and the Equal Protection Clause.

**A.     Substantive Due Process Claims**

As a general matter, there is no federal constitutional right to rescue services, competent or otherwise. Brown, 318 F.3d at 478 (joining other Courts of Appeals in this interpretation of

the rule from DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189 (1989)). There are two exceptions from DeShaney to this general non-liability rule. First, under the special relationship exception, a state has an affirmative duty to protect when the state, by affirmatively exercising its power, restrains an individual's liberty such that he is unable to care for himself, and therefore simultaneously fails to provide for such individuals' basic human needs. Brown, 318 F.3d at 478 (citing DeShaney, 489 U.S. at 200). Second, under the state-created danger exception, a state may be liable for violating constitutionally protected rights when the state, through its affirmative conduct, creates or enhances some danger for the individual. Id. (citing DeShaney, 489 U.S. at 201).

Plaintiffs may only prevail on their substantive due process claim if they can show that, based on one of these two exceptions, the City was obligated to undertake some affirmative action.

### 1.     **Special Relationship Exception**

As stated, under the special relationship exception, a state has an affirmative duty to protect when the state, by affirmatively exercising its power, restrains an individual's liberty such that he is unable to care for himself, and simultaneously fails to provide for such individuals' basic human needs. Brown, 318 F.3d at 478 (citing DeShaney, 489 U.S. at 200).

Plaintiffs have failed to plead that they had a special relationship with the City obligating the City to affirmatively protect them or their interests. The special relationship exception applies when there is a deprivation of liberty preventing a plaintiff from caring for himself. No such deprivation occurred here. The City created no special relationship with plaintiffs by citing plaintiffs' neighbor's property for violations.

## 2. State-Created Danger Exception

To prevail on a state-created danger theory, a plaintiff must plead that:

> (1) the harm ultimately caused was foreseeable and fairly direct, (2) a state actor acted with a degree of culpability that shocks the conscience, (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general, and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Henry v. City of Erie, 728 F.3d 275, 282 (3d Cir. 2013) (citing Morrow v. Balaski, 719 F.3d 160, 179 (3d Cir. 2013)); see also Kneipp v. Tedder, 95 F.3d 1199, 1208 (3d Cir. 1996).

### a. Foreseeability Of The Harm

Most cases involving failure to comply with safety standards will meet the foreseeability hurdle, and so more relevant is the question as to whether a defendant's actions are a fairly direct cause of a plaintiff's harm. Henry, 728 F.3d at 283. To show that a state action was the fairly direct cause of a plaintiff's harm, a plaintiff must plausibly allege that the official actions precipitated, or were the catalyst for, the harm alleged. Id. at 285. Merely showing that official actions "took place somewhere along the causal chain" will not suffice. Something about the state action must bring about the harm. Id.

Here, plaintiffs have not pled that the City's actions precipitated the fire at the Property. As in Henry, where the plaintiff acknowledged that the defendant did not start the fire or increase the building's susceptibility to fire, id., the plaintiffs here allege that the City failed "in properly enforcing its published process through its own affirmative actions" and "to properly pursue the abatement of the dangerous conditions which unfortunately culminated in the exact circumstance

7

which the L&I is charged with preventing." Pl. Opp. at 4-5. Plaintiffs cite to Gremo v. Karlin, 363 F. Supp. 2d 771 (E.D. Pa. 2005), analogizing a school's "ignoring, concealing, and failing to address . . . violent attacks," by a group of students, id. at 787, to the City's "systemically improper and ineffectual approach to addressing the dangerous conditions existing at the Property." Pl. Opp. at 3.  However, defendant's citation to case law from our Court of Appeals dealing directly with this particular sin of omission in Henry is more on point than plaintiffs' comparison to the facts developed in the district court in Gremo, in which the various defendants concealed and under-reported violent attacks by a group of students over several years. Gremo, 363 F. Supp. 2d at 787-88.  As in Henry, plaintiffs have not shown that the City's conduct fairly directly led to the harm suffered.

      **b.**      <u>**Degree Of Culpability**</u>

Negligence alone does not implicate the Due Process Clause. Daniels v. Williams, 474 U.S. 327, 336 (1986). A municipality must be deliberately indifferent for a plaintiff to establish liability under Section 1983, see City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989), and that deliberate indifference must be a foreseeable danger or risk. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 910 (3d Cir. 1997). The "shocks the conscience" standard for deliberate indifference applies in substantive due process cases where the state actor had to act with urgency. Brown, 318 F.3d at 480.

In evaluating whether conduct "shocks the conscience," the Court must consider context, as the precise degree of wrongfulness needed to reach a level that shocks the conscience depends upon the circumstances of the case. Sanford v. Stiles, 456 F.3d 298, 306 (3d Cir. 2006) (citing Miller v. City of Phila., 174 F.3d 368, 375 (3d Cir. 1999)). Our Court of Appeals has identified three standards, dependent upon whether (a) the state actor must make a split-second decision,

(b) there is no need for an immediate decision but true deliberation is not possible, or (c) there is more time to deliberate. Id. (listing the standards as intent to cause harm, gross negligence or arbitrariness that shocks the conscience, and deliberate indifference). Deliberate indifference applies when there is time to make an unhurried judgment. Id. at 307. Thus, the level of culpability required to shock the conscience increases as the time state actors have to deliberate decreases. Id. at 309.

Plaintiffs have not pled that the City was deliberately indifferent or acted in a manner that shocks the conscience, though, to be sure, the outcome of the fire was shocking. Plaintiffs allege the City should have undertaken additional legal action against the York Street Defendants. Though perhaps disappointing, it is not shocking to the conscience that L&I inspectors would not do more than issue additional citations to the owners of the Property upon plaintiffs' reports that the Property remained unsafe. Plaintiffs have not pled any deliberate indifference on the part of the City and so cannot satisfy this prong of the test.

### c. Relationship Between The State And The Plaintiffs

In the state-created danger context, the relationship between a state and a plaintiff need not be "custodial," as with the special relationship exception, but rather requires contact between the parties such that the plaintiff was a foreseeable victim in tort. Brown, 318 F.3d at 479.

The City did not discuss the third prong of the test except to note the distinction between this relationship and the special relationship exception to the general non-liability rule for municipalities. MTD at 9 n.9. Plaintiffs also did not discuss the third prong. We note that even if plaintiffs could show a sufficient relationship to satisfy this part of the test, the failure to plead sufficient facts on the other prongs would render such a showing irrelevant.

### d.     Affirmative Use Of Authority

The fourth prong of the test requires active conduct, and merely restating inaction as an affirmative failure to act does not alter the passive nature of the alleged conduct. Morrow, 719 F.3d at 179 (explaining that to hold otherwise would invite the exception to swallow the rule). Plaintiffs run afoul of this principle, as they urge us to consider the City's alleged "active indifference" to the unsafe conditions at the Property and its "affirmative action of implementing its deficient practices and procedures in combating hazardous properties." Pl. Opp. at 7-8. Failing to take appropriate action is precisely the type of inaction that does not satisfy the fourth prong of the test.

Plaintiffs attempt to argue that the City placed them in harm's way because they relied on the City to "handle" the conditions at the Property. Pl. Opp. at 7.  But there must be a direct causal relationship between a state actor's affirmative act and a plaintiff's harm. See Kaucher v. Cnty. of Bucks, 455 F.3d 418, 432 (3d Cir. 2006) (plaintiff must allege defendant acted affirmatively to create a risk of danger that otherwise would not have existed).  The Property's unsafe conditions did not result from the City's affirmative acts, and the City did not create or cause the danger leading to plaintiffs' harm. Plaintiffs cannot satisfy the fourth prong of the test.

Because plaintiffs have failed to plead facts sufficient to meet three of the four prongs of the state-created danger test, they cannot sustain a substantive due process claim against the City and we will therefore dismiss it.

### B.     Takings Clause Claim

The Takings Clause is implicated when a state uses its rightful property, contract, or regulatory powers to control rights or property which it has not purchased, Hawkins v. Coleman Hall, C.C.F., 453 F. App'x 208, 211 (3d Cir. 2011) (not precedential) (quoting Golder v. United

States, 453 F. App'x 208, 518 (Cl. Ct. 1988)). The Due Process Clause is not implicated by an official's negligent act causing an unintended loss of, or injury to, life, liberty or property. Id. at 210 (quoting Daniels, 474 U.S. at 328).

Though plaintiffs continue to press that the City's inaction is tantamount to action, their argument remains unpersuasive. The City did not exercise any power to take plaintiffs' Property. Plaintiffs' Takings Clause claim is thus facially deficient and we will therefore dismiss it.

### C.     Municipal Policy Or Custom Claims

A municipality is liable under Section 1983 where a plaintiff demonstrates that a municipality itself, through implementing a municipal policy or custom, causes a constitutional violation. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Importantly, without an underlying constitutional violation, there can be no Monell claim. Customers Bank v. Municipality of Norristown, 942 F. Supp. 2d 534, 546 (E.D. Pa. 2013); see City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.") (emphasis in original); see also Collins v. City of Harker Heights, Tex., 503 U.S. 115, 122 (1992) (whether there was a constitutional violation and whether the municipality was responsible are separate inquiries). Since plaintiffs have not shown a constitutional violation, they cannot make out a Monell claim. But even if plaintiffs did make out a constitutional violation, their pleadings fail to allege a custom, practice, failure to train, or relevant decisionmaker.

In a Section 1983 suit, a municipality can be liable only when the implementation of an officially adopted policy or informally adopted custom causes the alleged constitutional violation. Mulholland v. Gov't Cnty. of Berks, Pa., 706 F.3d 227, 237 (3d Cir. 2013) (citing

Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996)). Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict. Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990). A course of conduct is considered a custom when, though not authorized by law, officials' practices are so permanent and well-settled as to virtually constitute law. Id. Thus, to establish municipal liability under Section 1983, a plaintiff must show a deprivation of rights, privileges, or immunities secured by the Constitution and its laws as the result of an official government policy or custom. Mulholland, 706 F.3d at 238. There must be a direct causal link between the policy or custom and the alleged constitutional deprivation. Butler v. City of Phila., 2013 WL 5842709, *1 (E.D. Pa. Oct. 31, 2013) (O'Neill, J.) (quoting Harris, 489 U.S. at 385).

Plaintiffs fail to allege any facts supporting their contention that the City has a policy or custom that it implemented to create a constitutional harm to them. Plaintiffs allege in their Complaint that there is a policy and custom to "refuse to meaningfully enforce" City codes, "to fail and/or decline to take appropriate legal action", and "to fail and/or decline to follow its stated, internal policies and procedures regarding" those codes. Compl. at ¶¶ 84-86. These bare allegations that there is any such policy or custom do not suffice. Plaintiffs cite to paragraphs 27-40 of their Complaint as providing the sufficient pleadings to make out a policy or custom. Pl. Opp. at 8. But these paragraphs merely recite the parade of L&I inspectors who came to the Property and the various citations they issued in 2011 and 2012. Compl. at ¶¶ 27-40. They do not allege a custom or policy in the City of failing to enforce its codes; on the contrary, they document many inspections done and citations issued by L&I of an unsafe property. Such allegations, at most, show the City's inaction in one instance, which definitionally does not constitute a custom or policy. See Groman v. Twp. of Manalapan, 47 F.3d 628, 637 (3d Cir.

1995) (single incident of unconstitutional activity not sufficient to impose Monell liability, unless proof of incident includes proof that it was caused by an existing, unconstitutional municipal policy attributable to a municipal policymaker).[1]

Plaintiffs have also failed to plead a failure to train. Plaintiffs' Complaint includes the allegation that the City failed to adequately train or supervise those employees responsible for inspecting buildings and issuing citations. Compl. at ¶ 83. Failure to train may constitute a policy or custom giving rise to Section 1983 liability for a municipality only if the failure demonstrates deliberate indifference to residents' constitutional rights. See Harris, 489 U.S. at 389. A failure to train evinces deliberate indifference if

> in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

Id. at 390.

There must also be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation" to ground municipal liability. Id. at 385. Plaintiffs have made no factual allegations regarding the inadequacy of training or supervision of L&I inspectors let alone how such failure would evince deliberate indifference.

Further, plaintiffs have failed to show that any policymaker was responsible for the policy, or through acquiescence, for any such custom. Andrews, 895 F.2d at 1480. The question of who is a policymaker is one of state law. City of St. Louis v. Prapotnick, 485 U.S. 112, 142

---

[1] To be sure, the reality of fires, even fires with tragic consequences, is an all-too-common experience of every city in the nation and, indeed, the world.  So while fires like the one here are without question foreseeable, Section 1983 cannot be construed to impose the impossible duty on any municipality of preventing them from happening, which is precisely what plaintiffs here want us to do in the name of that statute.

(1988). A federal court, looking at state law, determines which official has final, unreviewable discretion to make a decision or take an action. Andrews, 895 F.2d at 1481. Plaintiffs allege that the employees of L&I who inspected the Property made "final discretional decisions regarding whether to take action on the known unsafe conditions." Pl. Opp. at 8-9. Despite this assertion, plaintiffs own pled facts suggest otherwise.  Various inspectors came and issued violations. Such actions suggest that the L&I inspectors in question were not policymakers with final, unreviewable discretion to make decisions or take action, but rather City of Philadelphia employees tasked with inspecting and citing potentially unsafe properties.

     Plaintiffs request that they be allowed -- if we find that they have insufficiently alleged the identity of a policymaker -- to cure the defect in their Complaint.  Pl. Opp. at 9. When a complaint is subject to dismissal under Rule 12(b)(6), we must permit a curative amendment, unless an amendment would be inadequate or futile. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008). Here, permitting amendment would be futile. See Koken v. GPC Intern., Inc., 443 F. Supp. 2d 631, 634 (D. Del. 2006) (citing In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997)); Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 468 (D.N.J. 1990) (court may property deny leave to amend where amendment would not withstand a motion to dismiss). Even if plaintiffs could specify "more named employees of Defendant," and described how those employees were final decisionmakers, plaintiffs have still not pled an underlying constitutional violation. Pl. Opp. at 9. Without that constitutional violation, the identity of any policymaker is irrelevant.

Because the plaintiffs have not pled a claim of municipal liability,[2] nor shown an underlying constitutional violation, we dismiss their claims. We will also deny their request to amend their Complaint to identify further employees who might be policymakers, since such amendment would be futile.

D.  **Equal Protection Claim**

To bring a successful Section 1983 claim for denial of Equal Protection, a plaintiff must prove purposeful discrimination -- meaning he or she was treated differently than other similarly situated individuals. Andrews, 895 F.2d at 1478. In their Complaint, plaintiffs allege that the City's actions and omissions "constitute an unlawful taking and deprivations of Plaintiffs' property rights in violation of the Equal Protection Clause of the United States Constitution." Compl. at ¶ 91. The City, in its motion to dismiss, notes that it does not believe plaintiffs to be

---

[2] Plaintiffs note that an investigative grand jury in the Court of Common Pleas of Philadelphia County issued a report on February 3, 2014 that found the City and L&I "had a custom and practice of not properly citing, documenting, and identifying material defects; did not meaningfully enforce its Building and/or Maintenance Codes; and did not take appropriate legal action to ensure compliance with the Codes or to properly secure and/or demolish the Property." Compl. at ¶ 43. Plaintiffs did not attach the Report or provide citation to this assertion.

In deciding a motion to dismiss, we may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record," and any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefits Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). A court must convert a motion to dismiss into a summary judgment motion if it considers extrinsic evidence in order to give the plaintiff an opportunity to respond. Id.  But when a complaint relies on a document, the plaintiff is on notice to provide the document's content. Id.

We do not consider the grand jury's report, as neither party has attached it, though plaintiffs attempt to rely on it in their Complaint and in their opposition to the motion to dismiss. But even if, as plaintiffs contend, the grand jury found such a custom and practice, plaintiffs still could not make out a Monell claim because there is no underlying constitutional violation.

bringing an Equal Protection claim, and, even if they were, they have not pled it sufficiently. MTD at 13 n.4.

To make out an Equal Protection claim under Section 1983, plaintiffs would have to plead that they were (1) members of a protected class, (2) similarly-situated to members of an unprotected class, and (3) treated differently from members of the unprotected class. Keenan v. City of Phila., 983 F.2d 459, 465 (3d Cir. 1992). A plaintiff may also allege he is in a "class of one," which requires alleging that he was intentionally treated differently from others similarly-situated by a defendant and that there was no rational basis for such treatment. Phillips, 515 F.3d at 243.

Plaintiffs have made no such pleadings or allegations. We therefore dismiss their Equal Protection claim.

### V.      Conclusion

Plaintiffs have failed to state a claim upon which relief can be granted with respect to their federal law claims against the City of Philadelphia. Though the "liberality of the pleading regime is accentuated within the civil rights context," a district court need not grant leave to amend a complaint where the complaint, as amended, would fail to state a claim upon which relief could be granted. Kundratic v. Thomas, 407 F. App'x 625, 629-30 (3d Cir. 2011) (not precedential) (citing Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000)). The deficiencies in plaintiffs' Complaint are not due to lack of factual specificity, and, thus, amending the Section 1983 claim to add richness of detail would be futile. We therefore dismiss all of plaintiffs' federal law claims with prejudice, deny plaintiffs' request for leave to amend the complaint, and exercise our discretion under 28 U.S.C. § 1367(c) to remand the state law claims to the Court of Common Pleas. An appropriate Order follows.

BY THE COURT:

/S/ STEWART DALZELL, J.